[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on June 16, 1984 in Greenwich, Connecticut. They have two children, Melissa born April 27, 1986 and Jeffrey born May 31, 1991. The parties have lived separate and apart for about a year. Both children live with their mother at the family home at 60 Glenville Street, Greenwich. The husband currently rents.
Their son Jeffrey is a special needs child who was diagnosed a year and half ago with ADD. He is not medicated at this time, but the school system has indicated that he needs a disciplinary plan. He is in fifth grade this year. Fran Rock, a psychologist and his guardian ad litem, testified that he also suffers from Obsessive Compulsive Disorder ("OCD") and that he "does not deal well with change." She also described him as "fragile, anxious, and intelligent." The wife spends extra time with him which in turn impacts on her ability to work. Day care is an issue, especially during the summer months when school is not in session. Ms. Rock testified that the young man views the family home as "his house." Upon questioning by the court, she indicated that "with sufficient preparation from his support group, he can adjust to a change (e.g., sale of the home) eventually."
The wife is 38 years of age and in apparent good health. She is a high school graduate and at the time of the marriage was working as a receptionist at UPS in Greenwich. Currently she works full time for the Greenwich Board of Education during the school year. She is paid $15.10 per hour plus benefits, which includes contributions to a 401(k), a pension plan, and medical insurance for herself and the children. During the two months of the summer she also works for the Board of Education as a temporary employee at $15.00 per hour. Prior to working at the Board of Education, she worked at the Town Hall approximately 25 hours per week at $14.00 per hour. In addition, she testified that she receives "rent" in an amount to $500.00 per month from one Robert Neville, of which approximately $200.00 is in cash, the balance coming from odd jobs and work around her home.
The husband is 44 years old and also in apparent good health. He is a high school graduate and at the time of the marriage was working as an CT Page 46 auto mechanic in a gas station. His current position is a driver with U.S. Postal Service. He has been employed there since 1986. He is paid a base rate of approximately $19.45 per hour for a 40-hour work week, however, he often works the night shift where there is a shift differential. Because of a shortage of drivers, he also continues to work overtime although somewhat reduced from the past. He also has been driving a fuel truck for Riverside Fuel for the past nine years during the heating season. He participates in a pension, a thrift savings plan, as well as other benefits through the Postal Service, including health insurance for himself and the children. In the past, he has worked as many as 80 to 100 hours in any given week, however, more recently it has averaged about 67 hours a week. Consequently, he has reported gross income during the past several years of between $63,000 and $83,000.
At the time of the marriage the parties rented an apartment in Port Chester from 1984 to 1987. In October 1987, they moved to 60 Glenville Street which was owned by the plaintiffs mother. It was during this period that the house was completely remodeled, including the plumbing and electrical systems, windows, and a fence, together with the addition of a carport and a flag walk. Much of the work was done by the plaintiffs father. The materials for the renovations were initially paid by the wife's parents by drawing on their then existing home equity loan. The parties in turn would pay to the wife's parents "rent" which equaled the amount of the monthly payment on the parent's home equity loan during their period of occupancy. Again, the wife's father provided the expertise, however, contrary to her and her family's assertions, the court believes that the husband did perform considerable manual work on the premises as a laborer on the projects. He also testified that some improvements, such as a pool and a new roof, were paid from the parties' savings.
In August 1995, the parties purchased the property from the wife's parents. As part of the consideration for the purchase they had to pay off the in-law's home equity line in the amount of $83,000 and they executed a demand promissory note to the wife's parents in the amount of $39,000. The total purchase price was $122,000 which was somewhat below fair the agreed upon fair market value of $304,000. In addition, there was an exchange of documentation and/or letters indicating that a portion of the purchase price was considered a gift to both. At the same time, the husband individually signed a document waiving all claims to the property in the event of a divorce. This was entered into without advice of counsel, and in light of all the circumstances, the court feels that it would be inequitable to enforce it. To complicate matters further, following the institution of the present action, the wife's parents have sued both of them to collect the balance of the promissory note. In addition to the first mortgage having a present balance of approximately CT Page 47 $73,000 and the loan to the wife's parents, there is a line of credit drawn down by the wife to pay her legal fees, which has a balance of about $8,500. The house is clearly the largest bone of contention by and between the parties. The wife would like to keep the house for a variety of reasons not the least of which is a stable base for their children, in particular their son Jeffrey. However perhaps more important, the wife's mother is particularly determined to keep the house, which was her grandfather's, "in the family."
As to other assets, the husband testified that at the time of their marriage he had approximately $34,000 in the bank while the wife had approximately $1,000. He indicated that their wedding gifts amounted to about $4,000 in cash. He also inherited approximately $17,000 from the estate of his late father in 1989, which he contributed to the marriage. The husband testified that he had bought all of the furniture from his income or savings. Each party drives an older model car. There are some savings bonds that the husband has acquired either through work, and some that he acquired prior to the marriage. At the time of the dissolution action the wife drew $13,000 out of a joint account. The husband then withdrew $7,400. There is approximately a $6,000 balance left which cannot be withdrawn without a penalty. The husband has introduced some evidence with regard to the valuation of his Thrift Savings Plan.
Until recently, the wife was the primary caretaker of the children and maintained the house both inside and out. She would work from time to time during the Christmas season at the Postal Processing Plant in Greenwich. Her mother has helped from time to time with the child care. According to the testimony of the plaintiff the husband told her "not to count on him" with child care because of his work schedule. On a going forward basis the cost of a child care provider is another bone of contention between the parties.
It is clear to the court that the marriage has been under some strains for a considerable period of time. The wife testified to the fact that she rents a room to "a gentleman," one Robert Neville, another Postal worker, who makes a regular financial contribution to the household and who also performs other services around the home. The court is convinced that this relationship is of long standing, and is more than a mere landlord-tenant relationship. The wife clearly believes that she has borne the burden of raising the children, especially the necessary extra attention with their son, and that the husband has been un-attentive, if not uninterested. The husband on his part has for nearly a decade worked two jobs in order to maintain their lifestyle. This has left him little or no time or energy for child rearing. The court suspects that he does not know how to deal with his son's problems. Clearly, a little balance was needed in each of their lives. The court makes observation that had CT Page 48 the husband been willing or able to apply a fraction of the same energy to his family that he has to his work, that things might have turned out differently.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and are true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown, in particular the wife's relationship with another man and the husband's failure to devote sufficient time to the family on a personal basis.
4. That the real estate located at 60 Glenville Street, Greenwich, Connecticut, was acquired in part by gift and in part by purchase from the wife's parents in August 1995 for the sum of $122,000; that the purchase was financed by means of a conventional bank mortgage as well as a demand promissory note to the wife's parents; that at the time of the transaction the agreed upon fair market value was $304,000; that prior to the transfer, the parties lived in the premises and paid rent to the wife's parents in an amount equal to the monthly payment due on a certain home equity loan in taken out by the wife's parents; that throughout the marriage, the parties made improvements to the property initially paid for by withdrawals by the wife's parents from the home equity; that the premises are the home for the wife and minor children; that the husband made significant financial and other contributions acquisition, maintenance, and preservation thereof; that the current fair market value of the property is $470,000; that the current balance of the mortgage is $73,000, which together with the $39,000 note and the line of credit in the amount of $8,500, leaves an equity of approximately $349,500; and that it is equitable and appropriate that both parties share therein.
5. That the husband's purported waiver of his rights in and to the real property dated August 17, 1995, was made without benefit of counsel and would be inequitable to enforce under all the circumstances of this case; but that, the court has taken into consideration that portion of the transfer representing the gift to both parties from the wife's CT Page 49 parents amounting to $182,000 (or approximately 60% of the then fair market value) and considered it as a significant factor in it division of that asset.
6. That the husband has a vested interest in a Thrift Savings Plan and a Pension through his employer; that his interest therein was acquired during the marriage; that the same are marital assets; and that it is equitable and appropriate that the wife share in these assets.
7. That given their work experience and education, and given the wife's responsibilities attending to the special needs of their son, both parties are earning at or about their earning capacities; that for purposes of basic child support that the husband's net earnings be based upon a 52-hour week (including overtime and shift differential); and that it is equitable and appropriate that the present financial orders be based upon earnings of the wife in the amount of $23,000 per annum and of the earnings of the husband in the amount of $60,000 per annum.
8. That there is sufficient evidence that the wife has had a significant personal relationship with one Robert Neville for as long as five years, and that said person has resided in the family home since November 2000; that said person makes a financial contribution to the household and performs other maintenance and chores around the home; and that an award of permanent periodic alimony is not warranted under the circumstances.
9. That the special needs of the minor child Jeffrey warrant that appropriate day care/after school care arrangements be made, in particular during the summer school recess, and that both parents cooperate with each other and contribute thereto. go up and put in code.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The parties shall have joint legal custody of the minor children, Melissa, born April 27, 1986, and Jeffrey, born May 31, 1991. The primary residence of the minor children shall be with the wife, subject to the reasonable, liberal and flexible visitation rights of the husband. Initial visitation with the husband shall be in accordance with a certain agreement entitled "Recommendations" executed by the parties as on file with this court (#149.10), and at such other times as the parties may agree. The parties shall consult with one another concerning all major CT Page 50 issues involving the minor children, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
3. No alimony is awarded to either party.
4. Commencing January 7, 2002, and every two weeks thereafter, the husband shall pay to the wife the sum of $440.00 as and for basic child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S. In addition, commencing January 7, 2002, and every two weeks thereafter, the husband shall pay the wife the sum of $60.00 as and for a contribution toward the day care expenses of the minor children, for a total biweekly support payment of $500.00. The foregoing notwithstanding, it is the intention of this order that the husband pay fifty (50%) percent of the present and future day care costs incurred by the wife for the minor children. The present order is based upon the current cost of day care for the minor children in the amount of $58.00 per week. The court expects these charges to change overtime and eventually cease, and that the husband's obligation shall be adjusted accordingly consistent with this order. In addition, during the summer recess, the husband shall contribute 35% of the cost of a summer camp program or programs for the minor child Jeffrey up to a maximum of $250.00 in the aggregate.
5. As to the jointly-owned real estate at 60 Glenville Street, Greenwich, Connecticut, within thirty(30) days from the date hereof, the husband shall convey his interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the wife shall have exclusive possession of the real estate, subject to the existing indebtedness, and she shall be responsible for the payment of all mortgages, lines of credit, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. The wife shall pay to the husband the sum of ONE HUNDRED FIFTEEN THOUSAND AND NO/100 DOLLARS ($115,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or the obtaining of new or additional financing, or a combination thereof, in an amount in excess of CT Page 51 25% of the present balance of the first mortgage, or four (4) years from the date of this Memorandum of Decision, whichever shall sooner occur. The wife shall execute a simple Promissory Note to the husband containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of her default, and which shall not bear interest if paid on or before the end of such four (4) year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be executed simultaneously with the delivery of the Quit Claim Deed to the wife. The wife shall use her best efforts to refinance the existing mortgage/home equity line and/or otherwise eliminate any obligations of the husband thereunder, within four (4) years from the date of this Memorandum of Decision.
6. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. Other personal property shall be divided as follows:
(1) The Evergreen Fund held at 1st Union Securities shall be divided equally by the parties within thirty (30) days from the date of this order.
(2) U.S. Savings Bonds: The Series E bonds shall belong to the husband free and clear of any claims by the wife, and the Series EE bonds shall be divided equally by the parties within thirty (30) days of this order.
(3) Each party shall be entitled to keep the balances in their respective checking and savings accounts free and clear of any claim by the other.
(4) The husband shall be entitled to keep his accumulated sick leave and vacation leave free and clear of any claims by the wife. CT Page 52
(5) The husband shall be entitled to keep his security deposit free and clear of any claims by the wife.
7. The husband shall maintain a portion of the existing life insurance in the amount of $125,000, and shall name minor children as equal beneficiaries thereof so long as he has an obligation to pay child support under the terms of this decree.
8. The wife shall maintain and pay for health insurance for each of the minor children so long as the husband shall be obligated to pay child support for either or both minor children, and so long as the same can be maintained by her as an incident of her employment and at reasonable cost to her. Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 45% by the husband and 55% by the wife. The provisions of Section 46b-84 (e) shall apply.
9. The retirement assets shall be divided as follows:
A. Thrift Savings Plan: Effective as of the date of this Memorandum of Decision, the then balance of the United States Postal Service Thrift Savings Plan ("Plan")of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband at the husband's sole expense, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to review the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
B. Postal Service Pension Plan: Effective as of the date of this Memorandum of Decision, that portion of the United States Postal Service Pension Plan ("Plan")of the husband through his employer and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband at the sole expense of the husband, 50% to the husband and 50% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this CT Page 53 Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to a review of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
C. Hudson United Bank IRA (#6342820): The husband shall be entitled to keep his IRA free and clear of any claims by the wife.
D. Town of Greenwich/Greenwich Board of Education: The wife shall be entitled to keep her interest in any retirement plans through the Town of Greenwich or the Greenwich Board of Education free and clear of any claims by the husband.
10. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing notwithstanding, the wife shall have the sole responsibility for the repayment of the line of credit and the $39,000 loan from her parents, and shall indemnify and hold him harmless from any further liability thereon. The court hasspecifically taken these liabilities into account in the division of themarital home.
11. Commencing with the tax year 2001 and thereafter, the husband shall be entitled to the tax exemption for the minor child JEFFREY, and the wife shall be entitled to the exemption for the minor child MELISSA. Each shall promptly execute the necessary documentation and deliver the same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
12. Each party shall be responsible for their respective attorney's fees and costs incurred in connection with this action.
13. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S. in order to secure the payment of the child support order.
THE COURT
SHAY, J.